# EXHIBIT A

1110

406

## IN THE CIRCUIT COURT OF THE THIRTEENTH
## JUDICIAL CIRCUIT FOR HILLSBOROUGH COUNTY, FLORIDA

STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,
OFFICE OF THE ATTORNEY GENERAL,

        Plaintiff,

vs.

AMERICAN FAMILY ENTERPRISES,
a/k/a American Family Publishers,
a/k/a Magazine Associates,
a foreign partnership,
TIME WARNER, INC ,
a foreign corporation,
TIME, INC ,
a foreign corporation,
TIME CUSTOMER SERVICE, INC ,
a foreign corporation,
ED MCMAHON, an individual,
DICK CLARK, an individual,
TIMOTHY ADAMS, an individual
and SUSAN CAUGHMAN, an individual

        Defendants

CASE NO. 98-00778 - ε-
DIVISION E



INSTR # 99212924
OR BK 09725 PG 0794
RECORDED 07/14/99 11:55 AM
RICHARD AKE CLERK OF COURT
HILLSBOROUGH COUNTY
DEPUTY CLERK J McLeod

0794

<div style="writing-mode: vertical-rl">BEST IMAGES AVAILABLE</div>

## STIPULATION OF THE PARTIES TO ENTRY OF ORDER OF DISMISSAL WITH
## PREJUDICE AND RETENTION OF JURISDICTION
## TO ENFORCE THE SETTLEMENT AGREEMENT

Plaintiff, the State of Florida, Department of Legal Affairs, Office of the Attorney

General, by and through its undersigned counsel, and the Defendants, American Family

Enterprises, Time Warner, Inc , Time, Inc , Time Customer Service, Inc., Ed McMahon, Dick

Clark, Timothy Adams, and Susan Caughman, by and through their undersigned counsel, hereby

GOV00-000007552

RETURN TO CIRCUIT CIVIL

stipulate to entry of an order dismissing this action with prejudice, with each side to bear its own costs and attorney's fees, and retaining jurisdiction to enforce this order and the terms of the Settlement Agreement. A copy of the May 28, 1999, Settlement Agreement is attached to this Stipulation as Exhibit A, and a proposed order is provided herewith for the Court's consideration.

Respectfully submitted,

For the Plaintiff

ROBERT A BUTTERWORTH
ATTORNEY GENERAL

GARY L BETZ
SPECIAL COUNSEL
Florida Bar No 0197750

VICTORIA BUTLER
ASSISTANT ATTORNEY GENERAL
Florida Bar No 0861250
Department of Legal Affairs
2002 North Lois Avenue, Suite 520
Tampa, Florida 33607
(813) 871-7255

For the Defendants

L. JOSEPH SHAHEEN, JR., ESQUIRE
Florida Bar No
GARDNER, WILKES, SHAHEEN
& CANDELORA
401 East Jackson St. Ste 2650
Tampa, FL 33602
(813) 221-8000
COUNSEL FOR DEFENDANTS
AMERICAN FAMILY ENTERPRISES,
TIME WARNER, INC , TIME, INC ,
ED MCMAHON, DICK CLARK,
TIMOTHY ADAMS, SUSAN
CAUGHMAN

OR BK 09725 PG 0795

GOV00-000007553

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION

STATE OF FLORIDA,
DEPARTMENT OF LEGAL AFFAIRS,
OFFICE OF THE ATTORNEY GENERAL,

        Plaintiff,

v                                                            Case No 98-00778

AMERICAN FAMILY ENTERPRISES,                                 Division E
a/k/a American Family Publishers,
a/k/a Magazine Associates,
a foreign partnership,
TIME WARNER, INC ,
a foreign corporation,
TIME, INC ,
a foreign corporation,
TIME CUSTOMER SERVICE, INC ,
a foreign corporation,
ED McMAHON, an individual,
DICK CLARK, an individual,
TIMOTHY ADAMS, an individual,
and SUSAN CAUGHMAN, an individual,

        Defendants

_____/



## ORDER OF DISMISSAL WITH PREJUDICE

    THIS CAUSE having come on before the Court for consideration upon Plaintiff, STATE OF

FLORIDA, DEPARTMENT OF LEGAL AFFAIRS, OFFICE OF THE ATTORNEY GENERAL,

and Defendants, AMERICAN FAMILY ENTERPRISES, TIME WARNER, INC , TIME INC ,

TIME CUSTOMER SERVICE, INC , ED McMAHON, DICK CLARK, TIMOTHY ADAMS, and

SUSAN CAUGHMAN Stipulation of the Parties to Entry of Order of Dismissal with Prejudice and

Retention of Jurisdiction to Enforce the Settlement Agreement, and the Court being fully advised

in the premises, it is hereby

OR BK 09725 PG 0796

GOV00-000007554

RETURN TO CIRCUIT CIVIL

ORDERED AND ADJUDGED that

1      Plaintiff's Amended Complaint and this Action are hereby dismissed with prejudice

2      This Court shall retain jurisdiction over this matter for purposes of enforcing the

terms of the Settlement Agreement entered into by the Plaintiff and Defendant, American Family

Enterprises

3      All parties are to bear their own costs, expenses and attorneys' fees

DONE and ORDERED, in chambers at Tampa, Hillsborough County, Florida, on this

14 day of July, 1999

ROBERT H BONANNO
Circuit Court Judge

Copies furnished to

Gary L Betz, Special Counsel
Victoria Butler, Assistant Attorney General
L Joseph Shaheen, Jr

OR BK 09725 PG 0797

GOV00-000007555

**CONFIDENTIAL**

## SETTLEMENT AGREEMENT

This Settlement Agreement is made as of this _28_ day of _May_ 1999 between the Attorneys General of the States of Connecticut, Florida, Indiana, Iowa, South Carolina and West Virginia ("the Participating States") and American Family Enterprises ("AFE")  AFE is a partnership of TAF Holdings Inc , and AFP Associates. L L C , with its executive offices at 10 Exchange Place, Jersey City, New Jersey   American Family Publishers ("AFP") is a trade name owned and licensed by a subsidiary of AFE   The entities referred to herein, together with the Attorneys General may be referred to collectively as the "Parties "

WHEREAS. the matters investigated by the Attorneys General of the Participating States (hereinafter referred to as the "Matters Investigated") include  1) AFP solicitation and promotional materials disseminated prior to the date hereof, some of which the Attorneys General contend contain certain misleading and deceptive representations including messages which allegedly cause recipients to believe a purchase is necessary to enter the sweepstakes, a purchase will enhance the recipient's chances of winning a sweepstakes, the recipient is a winner of a prize, forfeiture of the prize will result if the recipient does not respond immediately to the solicitation, selection of the prize winner is imminent, and the recipient is among a select group of candidates for a prize, 2) alleged deceptive and fraudulent AFP invoicing practices, including an accelerated invoicing cycle which resulted in duplicate payments by customers for single orders, 3) automatic extensions, without notice to customers, of magazine subscriptions upon receipt by AFP of customer overpayments or duplicate orders, 4) alleged misleading AFP debt collection practices, 5) rental of AFP mailing lists of sweepstakes entrants without notice to consumers, 6) AFP "customer only" sweepstakes offers, and 7) alleged improper use by AFE of spokespersons, and

WHEREAS, AFE has denied any wrongdoing or liability with respect to the Matters Investigated, and

WHEREAS, based on its investigation, the Attorney General of the State of Florida has filed an Amended Complaint against American Family Enterprises, a/k/a American Family Publishers,

1



EXHIBIT

A

OR BK 09725 PG 0798

GOV00-000007556

**CONFIDENTIAL**

a/k/a Magazine Associates, Time Warner, Inc, Time Inc, Time Customer Service, Inc, Ed McMahon, Dick Clark, Timothy Adams, and Susan Caughman, alleging violations of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, *Florida Statutes*, including a Scheme to Defraud in violation of Section 817 034(4)(a), and the Unlawful Game Promotions Act, Chapter 849, *Florida Statutes*, and Civil Theft violations under Sections 812 014 and 812 035, *Florida Statutes*, and

WHEREAS, based on their respective investigations of AFE, the Participating States have filed various actions, which actions are identified on Schedule "A" hereto, and/or have certain asserted and/or unasserted claims against some or all of the entities and persons named herein (the Participating States's actions, claims, and/or litigations are hereinafter collectively referred to as the "Litigations"), and

WHEREAS, the Parties have agreed to resolve the issues raised by the Matters Investigated and the Litigations by entering into this Settlement Agreement ("Agreement"), and

WHEREAS, the Parties are entering into this Agreement in an attempt to make progress toward developing minimum standards for the direct marketing industry, and

WHEREAS, the Parties acknowledge that this Agreement is entered into solely for the purposes of settlement and that nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, or of any other matter of fact or law, or of any liability or wrongdoing, all of which AFE expressly denies, including, without limitation, the violation of any applicable contest registration statute   No aspect of this Agreement is intended to be construed as constituting evidence in any action brought by any person(s), entity or other party of a violation of any federal or state statute or common law,

NOW, THEREFORE, it is agreed by, between, and among the Parties that as a means of resolving all of their differences and the Litigations, the Parties have entered into this Agreement   By entering into this Agreement, the Parties wish to confirm standards of present and future conduct as to the matters contained herein while avoiding any admission of past non-compliance and, therefore, agree as follows

OR BK 09725 PG 0799

GOV00-000007557

**CONFIDENTIAL**

1    **Official Rules Type Face** -- The Official Rules appearing in all Solicitation Materials[1] containing sweepstakes entry materials will be printed in a type size no smaller than eight (8) point type

2    **Odds in Official Rules** -- The Official Rules appearing in all Solicitation Materials containing sweepstakes entry materials will include a statement of the estimated odds of winning each prize offered in the sweepstakes

3    **Official Rules Retention** -- The Official Rules appearing in all Solicitation Materials containing sweepstakes entry materials will be provided to consumers in such a manner that they are capable of being retained by consumers after their entry into the sweepstakes

4    **Deadlines for Return of Sweepstakes Entries** -- If the Solicitation Materials include a sweepstakes entry deadline that requires the recipient to return the entry within a specified number of days from the date on the Solicitation Materials (as opposed to a fixed-date entry deadline), then the Solicitation Materials shall direct, in at least one place where the number of days for response appears, that the recipient "See Official Rules " When applicable, the Official Rules will state that, in calculating the response time, AFP will add a specified number of days to the days for response to allow for mailing and processing of the entry

5    **Select or Limited Groups** -- Solicitation Materials will not describe the recipient of the mailing as a finalist, in a final round, tied, or in a similarly winnowed-down group In the event that future sweepstakes are structured so that a recipient may be

---

[1]    For purposes of this Agreement, "Solicitation Materials" shall be defined as AFP direct mail marketing materials mailed from AFP to residents of Participating States which contain or refer to sweepstakes opportunities

3

GOV00-000007558

OR BK 09725 PG 0800

**CONFIDENTIAL**

a finalist, in a final round, tied, or in a similarly winnowed-down group, the basis for the elimination and/or selection will be clearly disclosed in the Solicitation Materials Under no circumstances shall recipients of Solicitation Materials be described as finalists, in a final round, tied, or members of a similarly winnowed-down group based solely on the fact that the Solicitation Materials were mailed to the recipient or that the recipient previously entered the sweepstakes

6     **Winner Statement**

a     Solicitation Materials will not represent that the recipient is a winner unless in fact the recipient is a winner

b     Solicitation Materials will not contain a statement that the recipient has or may have the winning entry, or is or may be holding the winning number, or similarly state that the recipient is the potential winner of any prize (a "potential winner" statement) unless

(i)     the "potential winner" statement conveys in prominent and readily understandable terms that the recipient has not yet won the prize[2],

(ii)     all relevant and material conditions to winning the prize are set forth in the Official Rules, and, with respect to the condition of returning the winning entry on time, such condition, if applicable, shall be prominently set forth in readily understandable terms in conjunction with the "potential winner" statement (or, if there are multiple

---

[2]     The use of a conditional word or phrase (such as "could" or "may") will satisfy paragraph 6(b), provided such word or phrase is prominently set forth in readily understandable terms and is not contradicted by language elsewhere in the Solicitation Materials

4

OR BK 09725 PG 0801

CONFIDENTIAL

potential winner statements in such Solicitation Materials, with such frequency and prominence that such stated conditions will be readily noticed and read by recipients), and

(iii)   for purposes of this paragraph, the term "prominent" or "prominently" shall mean that such statement is of such size, contrast, color and placement as to be readily noticed and read by reasonable persons With respect to size and contrast, "prominent(ly)" means the qualifying language must be in at least one-half the type size of, and in type as bold-faced as, the language it is qualifying The expression "readily understandable terms" shall mean that such statement or message is expressed in such common words, phrases or expressions, or in such symbolic or graphic form, as to be understood without difficulty by reasonable persons

c   Solicitation Materials that represent that a person is a winner will include an accurate description of the prize that the person has won or, if the prize is to be selected from a number of prizes, is likely to win, and a statement of when the prize is likely to be received

7   **No Misleading Representations About Enhanced Chance of Winning** -- Solicitation Materials will not represent that a recipient has an enhanced chance of winning the sweepstakes   In the event that future sweepstakes are structured so that certain eligible entrants have an enhanced chance of winning the sweepstakes, the basis for the elimination and/or selection will be clearly disclosed in the Solicitation Materials   (Solicitation Materials may truthfully compare different chances of winning different prizes in sweepstakes )

5

OR BK 09725 PG 0802

GOV00-000007560

**CONFIDENTIAL**

8    **Description of Entry Process and Registered Rules** -- Solicitation Materials containing sweepstakes entry materials will provide a clear description of the sweepstakes entry process and no statement regarding the entry process will contradict the Official Rules or represent that a purchase is necessary to enter or win. The Official Rules shall set forth the amount, number and total of prizes referred to in the Solicitation Materials and the sweepstakes end dates. The Official Rules shall also conform with the rules registered in each of the Participating States, where applicable, and said registered rules will contain any identifying numbers for individual sweepstakes. All sweepstakes entries contained in Solicitation Materials (whether containing an order or not) returned in response to a given mailing piece shall be directed to the same city.

9    **Preselected Numbers** -- In any sweepstakes promotions using a preselected winning number, AFE will ensure that a preselected winning number is mailed prior to the end of the sweepstakes promotion and will continue to select a winner in the event that a preselected winning number is not returned.

10    **Annual Grand Prize** -- AFE shall, for a period of three (3) years from the effective date of this Agreement, whenever it offers a grand prize that has a value in excess of $5,000,000 as part of its sweepstakes, award said prize or prizes on an annual basis or, at its option, more frequently. Provided, however, AFE may promote such sweepstakes, through mailings or other promotional devices or advertisements for no more than 15 months prior to the closing end date for such sweepstakes. All sweepstakes prizes offered by AFP will continue to be awarded.

11    **Simulated Documents** -- Solicitation Materials will not, when viewed in their entirety, simulate government documents. AFE will further comply with applicable state law governing simulation of negotiable instruments.

6

OR BK 09725 PG 0803

GOV00-000007561

**CONFIDENTIAL**

12    **"No Purchase Necessary" Message** -- Solicitation Materials will include a clear and conspicuous "no purchase necessary" disclosure, which disclosure shall be consistent with the registered rules and shall not be contradicted in the Solicitation Materials

13    **No Representations That Order History Enhances Chance of Winning** -- Solicitation Materials shall not represent that a recipient's entry into a sweepstakes has or will have an enhanced chance of winning (as compared to other entrants in that sweepstakes) based on the recipient's order history

14    **Notification to Non-Orderers** – Any notification to a consumer that he or she will or may be removed from AFP's mailing lists will not represent that the consumer's failure to order from AFP or respond to Solicitation Materials will result in the loss or forfeiture of any previously submitted sweepstakes entry   The text of any notification of such removal shall contain a statement informing consumers of how they may request additional sweepstakes opportunities from AFP or, in the alternative, the text may reference the Official Rules for additional sweepstakes opportunities, which Rules will contain such a statement   Such a statement need not be made in a notification sent as part of a program to identify and remove from mailing lists certain high-volume purchasers

15    **No Forfeiture** -- Solicitation Materials will not represent that a consumer's failure to order from AFP or respond to Solicitation Materials will result in the loss or forfeiture of any previously submitted sweepstakes entry or any claim to a prize that may be arising from or out of that previously submitted entry   The Official Rules included in the Solicitation Materials shall include a representation that non-response to the Solicitation Materials will have no effect on any previously submitted entries

OR BK 09725 PG 0804

GOV00-000007562

**CONFIDENTIAL**

16    **No Enhanced Chance of Winning by Ordering** -- Solicitation Materials will not represent that entries with orders, as opposed to entries without orders, will enhance the consumer's chances of winning the sweepstakes

17    **Number of Issues Purchased Shall Appear on Invoice** -- AFP shall disclose on the invoice sent to customers the magazine title(s) and number of magazine issues purchased by the customer

18    **Removal from AFP Mailing Lists** -- AFP shall provide a description with (not necessarily in) its Official Rules of the process through which a consumer can cause his or her name to be removed from AFP's mailing lists

19    **Nonrental of Names/Opt-Out** -- At least twice during a year, AFP shall include in at least two mailings (one of which will be a high-volume mailing) directed to prospects, i e , persons whose names have been obtained from outside mailing lists, an explanation of the procedure for requesting that a person's name not be included in any mailing lists made available by AFP for rental to third parties  The provisions of this paragraph shall not apply if AFP discontinues the practice of making available for rental to third parties the names of respondents to such prospect mailings

20    **Toll-Free Number** -- AFP shall maintain a toll-free consumer assistance telephone line  The toll-free number shall appear on AFP's Consumer Affairs Web Site, on any notices of duplicate payments sent pursuant to paragraph 24 of this Agreement and shall continue to be included on any invoices on which it is currently included by AFP    The toll-free number shall be available through Toll-Free    irectory Assistance

OR BK 09725 PG 0805

GOV00-000007563

**CONFIDENTIAL**

21    **Collection Notices** -- AFE's efforts to obtain payment of amounts due it will comply with the Fair Debt Collection Act Practices to the extent it is applicable to such activities   AFE further agrees not to make references to the "Time Warner Bad Debt Database" in connection with any efforts by AFE to obtain payment of its bills   AFE will not represent that previously submitted sweepstakes entries may be jeopardized by nonpayment

22    **Registration Requirements** -- All changes to the Official Rules required by this Agreement shall be made in accordance with and at such time as permitted by the applicable provisions of the Rules or Game Promotion Registration Statute of the particular Participating State

23    **Selection of Initial and Second Invoices and Crediting of Payments** -- AFP will commit to the following selection process for initial and second invoices

a    Initial invoices will be selected in the ordinary course of business within approximately three business days from the day an order is processed,

b    Initial invoices will be mailed in the ordinary course of business within approximately three business days from the day the initial invoices are selected as set forth in subparagraph a,  and

c    Second invoices will be selected in the ordinary course of business approximately 28 business days following  the Friday of the business week during which the order is processed

AFP will further commit that payments received will be posted as expeditiously as possible    The provisions of this paragraph shall not apply if AFP elects, at its

9

OR BK 09725 PG 0806

GOV00-000007564

**CONFIDENTIAL**

option, to automatically and promptly refund all duplicate payments for the entire subscription amount

24    <u>**Treatment of Duplicate Payments**</u> -- Upon receipt of a duplicate payment of the entire subscription amount for the same invoice, AFP shall, at its option, promptly refund the duplicate payment or provide notice, in substantially the form attached as Exhibit "1," advising the customer of the receipt of the duplicate payment   The notice will also inform the customer of the customer's options to   1) receive a refund of the duplicate payment, or 2) allow the duplicate payment to be applied as an extension of the customer's subscription   The duplicate payment will be treated as an extension pursuant to the second option if the customer does not respond to the notice

25    <u>**High-Volume Purchasers**</u> -- AFP shall cause

a    each customer who orders and pays for more than $300 in magazines, during a calendar year, in response to AFP's sweepstakes mailings, to be sent a reminder letter advising such customer that no purchase is necessary to enter or win AFP's sweepstakes,

b    each customer who, during a calendar year, orders and pays for more than $600 in magazines in response to AFP's sweepstakes mailings and who, in at least 75% of his or her responses sent to AFP places an order,  to be sent a reminder letter advising such customer that he/she may cancel a subscription and obtain a refund for all unserved copies,

c    each customer who, during a calendar year, orders and pays for more than $750 in magazines in response to AFP's sweepstakes mailings, to be sent a

OR BK 09725 PG 0807

GOV00-000007565

**CONFIDENTIAL**

reminder letter advising such customer that he/she may cancel a subscription and obtain a refund for all unserved copies and said letter will advise the customer of the number of paid orders received by AFE in that calendar year, and

d    each customer who, during a calendar year, orders and pays for $1,000 or more in merchandise and who paid for 15 or more orders in that year in response to AFP's sweepstakes mailings, to be sent a reminder letter advising such customer that no purchase is necessary to enter or win AFP's sweepstakes and said letter will advise the customer of the terms and conditions for return of the merchandise to obtain a refund

The applicable information required by this paragraph shall be conveyed annually (in the calendar year following the purchases made) and may be conveyed in one letter per eligible customer, as AFE shall determine  In addition to the foregoing, AFE shall appoint a Director of Consumer Services as described in Exhibit "3" hereto, and shall design and maintain a program to  (1) identify individuals whose high-ordering behavior indicates they may not understand sweepstakes promotions or other aspects of AFE's mailings, and (2) suppress certain designated individuals from receiving future AFE mailings

26    **Use of Spokespersons** -- Solicitation Materials from AFP shall not include statements attributed to spokespersons concerning sweepstakes or products offered by AFP which statements do not comply with the provisions of this Agreement

27    **Settlement and Release** -- Each Attorney General who is a signatory hereto acknowledges by his or her execution hereof that this Agreement constitutes a complete settlement and release of all claims, whether asserted or unasserted, on

11

OR BK 09725 PG 0808

GOV00-000007566

**CONFIDENTIAL**

behalf of the respective States for the Matters Investigated and for all claims, causes of action, damages, fines, costs, fees and penalties which were asserted or could have been asserted in the respective Litigations or otherwise, including conduct or actions by the Releasees (as defined below) with respect to any AFP Solicitation Materials or mailings disseminated prior to the effective date of this Agreement or for any practice relating to AFP which was the subject of this Agreement or the respective Litigations against AFP, AFE, its partners and all of their parents, subsidiaries, affiliates, partners, successors, assigns, agents, contractors, employees and representatives, including without limitation Time Warner, Inc , Time Inc , TAF Holdings Inc , AFP Associates, L L C , and Time Customer Service, Inc (as well as their respective officers, directors, employees, parents, subsidiaries, affiliates, representatives, agents and attorneys), Ed McMahon, Dick Clark, Timothy Adams, and Susan Caughman (all such released parties shall be collectively referred to as the "Releasees")  Each Attorney General agrees that the Attorney General shall not institute or proceed with any criminal action against Releasees (to the extent that any such Attorney General has criminal enforcement authority), and shall not proceed with nor institute any civil action or proceeding against Releasees, including but not limited to an action or proceeding seeking restitution, injunctive relief, fines, penalties, attorneys' fees or costs, for any AFP mailing which was disseminated prior to the effective date of this Agreement or for any conduct or practice relating to AFP prior to the effective date of this Agreement which was the subject of this Agreement or the aforementioned Matters Investigated or Litigations, except that each such Attorney General may institute an action or proceeding to enforce the terms and provisions of this Agreement or to take action based on future non-complying conduct

28      **Dismissal with Prejudice** -- Within 15 days of this Agreement being fully executed, each Attorney General shall execute and file a dismissal with prejudice of the

12

OR BK 09725 PG 0809

GOV00-000007567

**CONFIDENTIAL**

Litigations    The Dismissals with Prejudice of the Litigations shall not prevent the States from pursuing claims against individual parties arising from practices or conduct that falls outside the claims released in paragraph 27 above

29    **Effective Date** -- This Agreement shall become effective upon execution by all the Parties hereto, except that (a) as to paragraphs 17, 19, and 25, said paragraphs shall become effective 90 days from the execution date, and (b) as to paragraphs 1, 3, 4, 6, 8, 18, 22, and 26, said paragraphs shall become effective as soon as practicable, but in no event later than 180 days from the execution date

30    **Entire Agreement** -- This Agreement (including the Schedule and Exhibits attached hereto) contains all representations and the entire understanding among the Parties and supersedes all prior written and oral representations or agreements that exist or may exist between the Parties to this Agreement    AFE may request modification of this Agreement for any reason    This Agreement may be modified only by a written instrument signed by all the Parties to this Agreement

31    **Change in Controlling Law** -- If applicable state law or governing federal law changes or is interpreted so as to be inconsistent with any provision of this Agreement, the Parties agree to modify such provision(s) to the extent necessary to eliminate any such inconsistencies

32    **Waiver-Validity** -- No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver In the event that any provision of this Agreement is found to be void or unenforceable, the remaining provisions shall nonetheless be binding with the same effect as though the void or unenforceable parts were deleted

OR BK 09725 PG 0810

13

GOV00-000007568

**CONFIDENTIAL**

33    **Paragraph Headings/Construction** -- Paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement  This Agreement shall be construed without regard to the party or parties responsible for the preparation of the same and shall be deemed to have been prepared jointly by the Parties hereto  Any ambiguity or uncertainty existing herein shall not be interpreted against any party

34    **Authority** -- The individuals executing this Agreement on behalf of the respective Parties represent and warrant that they are fully authorized to execute this Agreement on behalf of such Parties and to bind such Parties to the terms of this Agreement

35    **Counterparts** -- This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute one and the same agreement

36    **Effect of Other Settlement Agreements** -- If AFE enters into any settlement agreement with respect to the Matters Investigated with any state other than the signatories hereto, which agreement is more favorable to the states than this Agreement or which requires equal prominence of disclosures or qualifying language, and with respect to any monetary differences taking into account differences in state population, then this Agreement shall be modified accordingly

37    **Financial Terms** -- AFE agrees to make the payments described in Exhibit "2," in accordance with the terms and conditions set forth therein, which payments will equal Four Million Dollars ($4,000,000)  Charitable contributions in the amount of $10,000 each shall be made on behalf of Ed McMahon and Dick Clark to the Muscular Dystrophy Association

14

OR BK 09725 PG 0811

GOV00-000007569

CONFIDENTIAL

38    **General Compliance** --AFE shall not violate those laws of the Participating States which prohibit deceptive, misleading and unfair trade practices and which govern the conduct of game promotions

39    **Compliance Reports** -- Within twelve (12) months of the final effective date of all provisions of this Agreement, as defined in paragraph 29 hereof, AFE shall submit a written report to the Attorney General of each Participating State as to AFE's compliance with the terms of this Agreement   AFE shall submit an additional written report as to AFE's compliance with the terms of this Agreement no later than 12 months after the initial compliance report   In addition to the foregoing, AFE shall include in the above-referenced written reports, the number of letters sent during the previous 12 months to high-volume purchasers and the number of individuals suppressed from receiving future AFE mailings   AFE shall include in its Compliance Reports a statistical summary describing its compliance with the requirements of paragraph 25 (High-Volume Purchasers)   The statistical summary will describe the number of customers receiving the reminder letters required under paragraph 25   Upon receipt of a request from any of the Participating States, AFE will make the information underlying the statistical summary available for review and inspection at the offices of AFE's local counsel in the Participating State   The information that AFE provides to the Participating States shall be governed by the terms of the protective orders entered in the actions described in Schedule "A "

40    **Retention of Jurisdiction** -- The courts in which the actions identified on Schedule "A" to this Settlement Agreement are pending shall retain jurisdiction over their respective matters for purposes of enforcing the terms of this Settlement Agreement and the Parties agree to cooperate and execute the appropriate documents including submitting this Agreement to the respective courts to effect the Courts' retention of jurisdiction and the dismissal of the Litigations in the respective states   The party seeking to enforce the Settlement Agreement may do so by filing a motion to enforce

15

OR BK 09725 PG 0812

**CONFIDENTIAL**

settlement agreement with the court   This motion shall be served by registered mail to the opposing party with a copy to that party's last known attorney of record   The party against whom enforcement is sought shall provide a written response to the motion within 30 days of service thereof

41    **Failure to Reach Agreement With Connecticut and/or Iowa** -- In the event that the States of Iowa and/or Connecticut do not execute this Agreement, the payments due under paragraph 37 shall be modified as follows  (a) the payment described in paragraph A of Exhibit "2" to the Settlement Agreement shall be made to the Attorneys General of the Participating States who sign the Agreement, provided, however, the amount of $150,000 per nonparticipating State shall be held in escrow in the Florida Department of Legal Affairs Revolving Escrow Trust Fund pending final resolution of the pending disputes with Iowa and Connecticut, and (b) the payment described in paragraph B of Exhibit "2" shall be reduced by $250,000 per nonparticipating State   In addition the defined terms "Participating States" as used in this Agreement shall not include Iowa or Connecticut in the event such state does not execute the Agreement

42    *Further Assurances* -- The Parties agree to cooperate and execute such documents as are reasonably necessary to effectuate the terms of this Agreement

16

OR BK 09725 PG 0813

GOV00-000007571

08 27/98  THU 21 45 FAX 81322   17          G F S & C                              ☒022

**CONFIDENTIAL**

Between American Family Enterprises and the States of Florida, Connecticut, Indiana, Iowa, South
Carolina and West Virginia

Dated: 28 May 1999                    AMERICAN FAMILY ENTERPRISES

                                      By _Susan Caughman_

                                         Susan L. Caughman, President and Chief
                                         Executive Officer

                                         10 Exchange Place
                                         Jersey City, New Jersey 07302

OR BK 09725 PG 0814

GOV00-000007572

**CONFIDENTIAL**

Approved as to form

Gardner, Wilkes, Shaheen & Candelora
Attorneys for American Family Enterprises

By _____
        L. Joseph Shaheen, Jr

401 East Jackson Street, Suite 2650
Tampa, Florida 33602

OR BK 09725 PG 0815

18

GOV00-000007573

**CONFIDENTIAL**

Between American Family Enterprises and the State of Florida

Dated May 28 , 1999

ROBERT A. BUTTERWORTH
ATTORNEY GENERAL

By _____

400 South Monroe Street
Tallahassee, Florida 32399-6536

OR BK 09725 PG 0816

GOV00-000007574

**CONFIDENTIAL**

Between American Family Enterprises and the State of Connecticut

Dated _____, 1999

                             **RICHARD BLUMENTHAL**
                             **ATTORNEY GENERAL**

                    By _____

                             110 Sherman Street
                             Hartford, Connecticut 06105

GOV00-000007575

OR BK 09725 PG 0817

**CONFIDENTIAL**

Between American Family Enterprises and the State of Indiana

Dated. _5/27_ , 1999

                              JEFFREY A. MODISETT
                              ATTORNEY GENERAL

                    By _J. Modisett_

                              Indiana Government Center, South
                              5th Floor
                              402 West Washington Street
                              Indianapolis, Indiana 46202

21

OR BK 09725 PG 0818

**CONFIDENTIAL**

Between American Family Enterprises and the State of Iowa

Dated _____, 1999

<div align="center">

**THOMAS J. MILLER**
**ATTORNEY GENERAL**

</div>

By _____

1300 East Walnut
Hoover Building, 2nd Floor
Des Moines, Iowa 50319

22

OR BK 09725 PG 0819

05/28/99  FRI 13 04 FAX 8132291597          G W S & C                                    ☑002

**CONFIDENTIAL**

Between American Family Enterprises and the State of South Carolina, in all respects except that South Carolina cannot agree under South Carolina law to the provision of paragraph 27 of the Settlement Agreement which states " the Attorney General shall not institute or proceed with any criminal action against Releasees (to the extent that any such Attorney General has criminal enforcement authority) ." South Carolina agrees to all other terms of paragraph 27 and the Settlement Agreement

Dated· June 2 1999

                                    CHARLES M. CONDON
                                    ATTORNEY GENERAL

                        By

                        Post Office Box 11549
                        Columbia, South Carolina 29211

OR BK 09725 PG 0820

GOV00-000007578

**CONFIDENTIAL**

Between American Family Enterprises and the State of South Carolina, in all respects except that
South Carolina cannot agree under South Carolina law to the provision of paragraph 27 of the
Settlement Agreement which states "...the Attorney General shall not institute or proceed with any
criminal action against Releasees (to the extent that any such Attorney General has criminal
enforcement authority)..."  South Carolina agrees to all other terms of paragraph 27 and the
Settlement Agreement.

Dated: _____ 1999

                                        CHARLES M. CONDON
                                        ATTORNEY GENERAL

                                        By _____

                                        Post Office Box 11549
                                        Columbia, South Carolina 29211

OR BK 09725 PG 0821

23

GOV00-000007579

05/28/99  FRI 10 15 FAX 3132291597          G W S & C                                    ☒029

**CONFIDENTIAL**

Between American Family Enterprises and the State of West Virginia

Dated.  *5-28* , 1999

DARRELL V. MCGRAW, JR.
ATTORNEY GENERAL

By

State Capitol, Room 76-E
Charleston, West Virginia 25305

24

GOV00-000007580

OR BK 09725 PG 0822

### SCHEDULE "A"

#### Litigations

1   State of Connecticut v American Family Enterprises, Inc d/b/a American Family Publishers, Ed McMahon and Dick Clark, Docket Number X03-CV-98-0492087-S, pending in the State of Connecticut Superior Court, Judicial District of New Britain

2   State of Florida, Department of Legal Affairs, Department of the Attorney General v American Family Enterprises, a/k/a American Family Publishers a/k/a Magazine Associates, Time Warner, Inc, Time, Inc, Time Customer Service, Inc, Ed McMahon, Dick Clark, Timothy Adams, and Susan Caughman, Case No 98-00778, pending in the Circuit Court of the Thirteenth Judicial Circuit of Florida, in and for Hillsborough County, Florida

3   State of Indiana v American Family Enterprises d/b/a American Family Publishers, Ed McMahon and Dick Clark, Cause No 49D04-9804-CP-578, pending in the State of Indiana, County of Marion, in the Marion Superior Court, Indiana

4   State of Iowa, ex rel Thomas J Miller, Attorney General of Iowa, 99AG25112 v American Family Publishers, Equity No CE 000 37434, pending in the Iowa District Court for Polk County, Iowa

5   State of South Carolina, ex rel, Charles M Condon in his official capacity as South Carolina Attorney General v American Family Publishers, Ed McMahon and Dick Clark, and Time Customer Service, Inc, Docket No 98-CP-40-1500, pending in the State of South Carolina, County of Richland, Court of Common Pleas

6   State of West Virginia ex rel, Darrell V McGraw, Jr, Attorney General v American Family Publishers, Inc d/b/a American Family Publishers, Time Customer Service, Inc, Ed McMahon and Dick Clark, Civil Action No 98-C-1093, pending in the Circuit Court of Kanawha County, West Virginia

OR BK 09725 PG 0823

GOV00-000007581

## EXHIBIT "1"



# CUSTOMER SERVICE

November 4, 1998

Dear

It seems that you've sent us a duplicate payment for your magazine subscription.

As stated on your invoice, when this happens we notify the publisher to extend your existing subscription  This way you get a doubly good deal - twice as many issues while these same low per-copy prices are still in effect

However, if you prefer a refund, just return this card (or call us at 1-800-237-2400) and we will issue you a prompt refund  When you shop American Family Publishers, it's what you want that counts'

COASTAL LIVING, 6 ISS , $9 97

Sincerely,

Lynn Walker
Customer Service

396744PNOMH 047W96 101598/10

FLAG 37

OR BK 09725 PG 0824

GOV00-000007582

## EXHIBIT "2"

AFE agrees to the following

A     Within thirty (30) days of the date this Agreement is executed by all of the Parties hereto, in full satisfaction of any claims by any of the Participating States for fines, civil penalties, attorneys' fees, costs, investigation and litigation costs, and other damages, AFE will cause a total of One Million Dollars ($1,000,000) to be paid to the Participating States. Payment will be made by official bank check made payable jointly to the Attorneys General of each of the Participating States unless AFE is otherwise instructed by written instrument signed by the Attorneys General of all Participating States. This fund will be distributed by the Participating States as they collectively determine.

B     AFE will contribute Three Million Dollars ($3,000,000) to establish a guaranteed consumer fund (the "Consumer Fund") for the benefit of the residents of the Participating States. This guaranteed Consumer Fund shall be funded and administered as follows:

       1     In the event that Multi-District Case No. 1235 (the "MDL Case") is resolved through final settlement or judicial resolution including the final resolution of any objections or appeals (unless the requirement of resolution of such objections or appeals is waived by AFE) within fifteen (15) months of the date of execution of this Agreement (unless such time frame is extended as allowed in Section B.2. hereof), the $3,000,000 guaranteed Consumer Fund will be deposited as part of the fund established by the settlement of the MDL Case (the "MDL Fund"), and the Participating States' residents who are members of the class certified in the MDL Case, will be entitled to either receive payments automatically and/or to seek compensation from the MDL Fund. In such case, the Consumer Fund will be administered as part of the MDL Fund and will be distributed as set forth in the MDL settlement agreement or as otherwise ordered by the MDL court. AFE will cause the MDL settlement agreement or any order in the MDL Case disposing of such Consumer Fund (as a part of the MDL Fund) to provide that on completion of the claims process in the MDL Case (the "Claims Completion Date"), the administrator of the MDL settlement will provide an accounting describing the total amount paid out to residents of the Participating States through claims paid through the MDL settlement. For purposes of this Agreement, a person will be considered a "resident" of the state shown as his or her state of residence on the last known magazine or merchandise order delivered to AFP up to December 31, 1998. To the extent that residents of Participating States have not been paid cumulatively claims equal to or in excess of the $3,000,000 guaranteed amount as of the Claims Completion Date, funds adequate to cover the shortfall between the total amount paid to residents of Participating States and the guaranteed amount shall be delivered to the

OR BK 09725 PG 0825

GOV00-000007583

Attorneys General of the Participating States within one hundred twenty (120) days of the Claims Completion Date  To the extent there remain any monies in the MDL Fund after the Claims Completion Date, this shortfall shall be paid to the Participating States' Attorneys General from such residual MDL Funds  This payment of the shortfall shall be paid over to the Attorneys General of the Participating States by check made payable jointly to such Attorneys General to be distributed to persons who qualify as members of the class certified in the MDL Case in such manner as such Attorneys General in their sole discretion determine  AFE shall also use its best efforts to obtain the compliance of members of the Plaintiffs' Steering Committee in the MDL Case with their representations that the Attorneys General of the Participating States will have the opportunity, through a designated representative or representatives, to participate in the MDL Case settlement process by  1) participating with the Plaintiffs' Steering Committee and the Court in the MDL Case in developing the criteria for considering claims to the fund to be designated as the "hardship" or "special circumstances" fund, 2) participation with and representation on the primary oversight committee which will supervise and oversee the processing of claims to the "hardship" or "special circumstances" fund in the MDL Case, and 3) having MDL settlement checks from the "hardship" or "special circumstances" fund transmitted to residents of the Participating States accompanied by a letter from the Attorney General of their respective state, or

2　　If the MDL Case does not reach final settlement or final resolution including the final resolution of any objections or appeals (unless the requirement of resolution of such objections or appeals is waived by AFE), within fifteen (15) months of the date of execution of this Agreement, AFE shall pay the guaranteed amounts to the respective Attorneys General of the Participating States to establish a Consumer Fund for the benefit of the consumers of their respective states within ninety (90) days of the expiration of such 15-month period, provided, however, to the extent that any objection or appeal is asserted by any Attorney General, AFE shall be entitled to extend the time for obtaining final resolution of the MDL settlement until such appeal or objection is finally resolved including any appeals  In the event that AFE makes payment to the Attorneys General under this subparagraph,  the Consumer Fund shall be administered and distributed by the Attorneys General of the Participating States as the Attorneys General in their discretion determine

2

OR BK 09725 PG 0826

GOV00-000007584

## EXPLANATORY NOTE: EXHIBIT 2

This will explain how the Participating States are guaranteed to receive $4 million as a result of the Settlement Agreement and provide some explanation of Exhibit 2 to that Agreement

1    PAYMENT OF THE $1 MILLION
Regardless of whether there is an MDL settlement with the proposed class, the Participating States will receive $1,000,000 for civil penalties, etc  (Under Paragraph A of Exh 2)  This money is to be paid within 30 days of the signing of the Agreement with all the Participating States

2    PAYMENT OF THE $3 MILLION

A    If there is no MDL settlement

If the $3,000,000 is not deposited by AFE pursuant to a settlement of the MDL case within 15 months of all Participating States signing the agreement, $3,000,000 will be paid by AFE to a consumer fund to be administered by the Attorneys General  This payment must be made within 90 days of expiration of the 15 month period for finalization of the MDL settlement

B    If the MDL settlement is approved within 15 months of the execution of the Settlement Agreement

The Settlement Agreement guarantees that the payments the residents of the Participating States receive must be at least $3,000,000  At the end of the claims processing in the MDL case, an accounting will be provided to demonstrate how much money was in fact distributed to class members in the Participating States  If that amount equaled or exceeded $3,000,000, no additional funds will be provided  If that amount falls short of $3,000,000, the Participating States will receive the difference within 120 days of the Claims Completion Date  (E g , if total claims paid to residents of Participating States is $2,000,000, the Participating States will be paid $1,000,000 )

Any such "shortfall" payment will be made as follows  If there are funds left in the MDL settlement, the shortfall will be paid from these funds  If there are no remaining amounts in the MDL proceeding, AFE must pay the shortfall  (Obviously, if the Participating States receive more than $3,000,000 from the MDL case, there would be no shortfall, and thus no additional payment )

3    WHAT IS THE CURRENT STATUS OF THE MDL SETTLEMENT AS IT RELATES TO DISPOSITION OF THE CONSUMER FUND

There will be a total consumer fund of approximately $30,000,000  It is anticipated that

OR BK 09725 PG 0827

GOV00-000007585

the consumer fund will have two features an automatic partial refund component and a hardship fund Although nothing has been finalized, currently the number being discussed for the automatic fund is around $24,000,000 with a hardship fund of around $6,000,000

      A    The "automatic partial refund fund"      The plaintiffs' steering committee is currently developing criteria for automatic refunds for certain class members Nothing has been finalized. However, one basis being discussed is providing an automatic partial refund to any member spending $1500 or more on AFE sweepstakes over the six year class period While it has not yet been determined how much that partial refund will be, it is anticipated that refunds will range from a minimum of $150 to several hundred dollars per customer While the specific criteria has not yet been determined, it seems likely that the automatic fund of about $24,000,000 will go to a group that represents anywhere from 30,000 to approximately 100,000 people By way of example only, if this subclass represents 35,000 people (some of whom, of course, will be from the Participating States) and the fund is $24,000,000, each person who spent $1500 or more at any time in the class period would receive an average refund of around $685 If this subclass represents 50,000 people, the average refund would be around $480

      The automatic fund itself may have subclasses that can also receive money from the automatic fund This could mean, for example, that class members who spent $300 or more in each of the past two years might also receive an automatic partial refund Again, these determinations have not yet been made and will not be presented to the court for another few weeks

      B    The "hardship" or "special circumstances" fund (referenced hereafter as the "hardship fund") It is anticipated that initially this fund will contain at least $6,000,000 It is also anticipated that to the extent that moneys are not actually disbursed from the automatic fund, those funds will be poured over into hardship fund [1] The criteria for the hardship fund has not yet been finalized and the Participating States have been offered the opportunity to help define this criteria and to participate on the committee overseeing the criteria development and claims implementation process (Exhibit 2, paragraph B 1 )

---

    [1]    It is likely that a percentage of checks sent to class members will either be returned as undeliverable or otherwise will not be cashed Those excess monies will go into the hardship fund

OR BK 09725 PG 0828

**Exhibit "3"**

May 26, 1999

To the Attorneys General of the Participating States
(as defined in the Settlement Agreement)

During our negotiations regarding the Settlement Agreement by and among the Attorneys General of the States of Connecticut, Florida, Indiana, Iowa, South Carolina and West Virginia (the "Participating States") and American Family Enterprises ("AFE"), we agreed to implement a program for the appointment of a liaison to the Participating States to assist in the resolution of consumer complaints and most importantly issues that may arise regarding "high-volume purchasers" This letter is intended to describe and confirm the program that AFE will voluntarily implement

AFE will appoint a Director of Consumer Affairs (the "Director") who, among other things, shall be responsible for acting as a direct liaison to the Participating States with the specific responsibility of investigating and using best efforts to resolve any concerns regarding complaints directed to the liaison by the offices of the Attorneys General of the Participating States and especially complaints relating to potential "high-volume purchasers" as defined in the Settlement Agreement   The Director will have the authority to resolve such consumer issues on a case by case basis, which resolution may include determining whether refunds may be appropriate and whether a consumer should be removed from AFE's mailing lists   The Director shall also be responsible for responding to requests for information from the Attorneys General of the Participating States

OR BK 09725 PG 0829

GOV00-000007587

Attorneys General of the Participating States
May 26, 1999
Page 2

The Director shall maintain his or her office at AFE's headquarters which are currently located in Jersey City, New Jersey and shall report directly to the general counsel of AFE as well as work closely with the Vice-President of Operations who oversees customer service issues  The Director will be appointed within ten (10) days of execution of the Settlement Agreement by all of the Participating States  At that time we will advise of the person appointed Director and how to contact him or her

We trust this liaison program will be a positive step in not only confirming AFE's commitment to consumer affairs but also in better enabling us to address any future concerns you may have  In that regard, we would also like to implement a procedure whereby we can all be assured that any future concerns will be brought to our attention in sufficient time to give us an opportunity to address them  Specifically, we request that the Participating States agree that if any of them believe in the future that AFE has violated any provision of the Settlement Agreement by and between AFE and the Participating States, then the Attorney General who believes that such a violation has occurred, will first contact AFE in writing, via facsimile (201-369-4967) and overnight mail addressed to the attention of Karen Shaer, Esquire, General Counsel, American Family Enterprises, 10 Exchange Place, Jersey City, New Jersey 07302, or any person subsequently designated by AFE to receive such notice, and advise AFE of the manner in which it is believed that the Settlement Agreement has been violated  AFE shall have thirty (30) days to meet and discuss and/or cure any alleged violation of the Settlement Agreement  The Attorney General of any Participating State shall not be required to provide such notice in the event that he or she determines that an emergency exists

Karen B  Shaer
General Counsel AFE

OR BK 09725 PG 0830

GOV00-000007588

MAY-28-99 FRI '' 05 AM  K SHAER                    FAX 2125791677          PAGE  2
  05/27/99  THU 21:49 FAX 8132291897           G W S & C                                          ℤ038

## GUARANTY

TAF Holdings Inc and AFP Associates, L.L.C. (collectively referred to as the "Guarantors"), hereby guarantee the payments required under paragraph 37 of the Settlement Agreement by and among American Family Enterprises ("AFE") and the Participating States, as defined in the Settlement Agreement executed by AFE on _May 27_, 1999  The payments guaranteed by the Guarantors shall be modified by the terms of paragraph 41 of the Agreement and the payments guaranteed shall be made in accordance with Exhibit "2" to the Settlement Agreement.

Executed this _28th_ day of _May_, 1999

TAF HOLDINGS INC.

By: _____
Name: _Richard Th Friedman_
Its _AVT Secy_

AFP ASSOCIATES, L L C

By _____
Name _____
Its _____

OR BK 09725 PG 0831

GOV00-000007589

05/27/99  THU 21:48 FAX 8132291587          C W S & C                                    @038

## GUARANTY

TAF Holdings Inc. and AFP Associates, L.L.C. (collectively referred to as the "Guarantors"),

hereby guarantee the payments required under paragraph 37 of the Settlement Agreement by and

among American Family Enterprises ("AFE") and the Participating States, as defined in the

Settlement Agreement executed by AFE on _May 28_, 1999  The payments guaranteed by the

Guarantors shall be modified by the terms of paragraph 41 of the Agreement and the payments

guaranteed shall be made in accordance with Exhibit "2" to the Settlement Agreement.

Executed this _28_ day of _May_, 1999

TAF HOLDINGS INC.

By: _____
Name: _____
Its: _____

AFP ASSOCIATES, L.L.C.
By: HVP Corporation, member

By: _Peter A. Connolly_
Name: _Peter D. Connolly_
Its: _VP_

OR BK 09725 PG 0832

THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE. WITNESS MY HAND AND OFFICIAL SEAL
THIS 8th DAY OF December, 20 22
Hillsborough County, State of Florida
Clerk of the Circuit Court and Comptroller
By: _____
Print: Ilka Rivera  As Deputy Clerk

GOV00-000007590